Mary REMINGTON *v.* John T. ROBERSON

CA 02-207                                    98 S.W.3d 44

Court of Appeals of Arkansas
Division III
Opinion delivered February 12, 2003

[Petition for rehearing denied March 19, 2003.]

*Stuart Law Firm*, by: *J. Michael Stuart* and *Baxter & Jewell, P.A.*, by: *Samuel R. Baxter*, for appellant.

*Hatfield & Lassiter*, by: *Richard F. Hatfield*, for appellee.

TERRY CRABTREE, Judge. George Felton died on January 15, 1999. He made several wills and trusts during his lifetime. At the time of his death, the decedent had resided in a nursing home for approximately ten months. Appellant Mary Remington[1] is a niece of the decedent. Appellant originally filed a petition seeking appointment as administrator of the decedent's estate, alleging that he died intestate. Appellee John Roberson filed a petition seeking to have a copy of a will dated July 15, 1997, admitted to probate as a "lost will." Appellee is named as executor under the July 1997 will but is not a beneficiary under that will. Appellant filed a petition seeking to have an undated holographic instrument admitted to probate as the last will of the decedent. This appeal is from an order establishing appellee's proffered document as a lost will and admitting that will to probate while denying admission to probate of the holographic instrument proffered by appellant. We reverse.

By letter opinion dated April 26, 2001, the trial court found that the July 1997 will was not found among the decedent's papers at his death, thereby raising the presumption that the decedent revoked or destroyed the will. The trial court then found that appellee had rebutted the presumption and that the July 1997 doc-

---

[1] Appellant and her sister, Margaret Scott, are the daughters of Francis Felton, the decedent's brother. Francis Felton predeceased George Felton. The notice of appeal lists both appellant and Margaret Scott as the parties appealing the trial court's order. A separate notice of appeal was filed on behalf of Rita Pixley and Daniel Beaudry, the great-niece and great-nephew of the decedent. We refer to Mary Remington as the appellant.

ument was a "lost will" within the meaning of Ark. Code Ann. § 28-40-302 (1987). By letter opinion dated July 24, 2001, the trial court found that the holographic document proffered by appellant was not valid because it lacked a date and, without a date, it could not be determined without speculation whether it was executed prior or subsequent to the July 1997 lost will. An order incorporating the findings of the two letter opinions and admitting the July 1997 lost will to probate was entered on August 3, 2001. This appeal followed.

■ ■ On appeal, "[p]robate cases are reviewed *de novo* . . . [and] we will not reverse the probate judge's findings of fact unless they are clearly erroneous. . . . A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake has been committed." *Snowden v. Riggins*, 70 Ark. App. 1, 7-8, 13 S.W.3d 598, 602 (2000) (citations omitted); *see also* Ark. R. Civ. P. 52(a). Due deference will be given to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996). Furthermore, "[w]hile we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a *de novo* review to reach a different result required by the law." *Standridge v. Standridge*, 304 Ark. 364, 370, 803 S.W.2d 496, 499 (1991) (citations omitted).

■ ■ For her first point, appellant argues that the trial court erred in admitting a copy of the July 15, 1997, will to probate as a lost will.[2] There is a presumption that a testator destroyed a will, executed by him in his lifetime, with the intention of revoking the will, if he retained custody of the will or had access to it, and if it could not be found after his death. *Garrett v. Butler*, 229 Ark. 653, 317 S.W.2d 283 (1958); *Porter v. Sheffield*, 212 Ark. 1015, 208 S.W.2d 999 (1948); *Gilbert v. Gilbert*, 47 Ark. App. 37, 883 S.W.2d 859 (1994). This presumption, however, may be overcome by proof. *Garrett, supra.* The proponent of the will has the burden of proving by a preponderance of the evidence that the

---

[2] Appellant does not question that the 1997 will was appropriately executed and the trial court's letter opinion stated that there was no doubt as to its execution.

decedent did not revoke the will during his lifetime. *Id., see also Thomas v. Thomas,* 30 Ark. App. 152, 784 S.W.2d 173 (1990). The trial court found that appellee had rebutted the presumption.

■ ■ The first reason given by the trial court in support of the conclusion that appellee had rebutted the presumption is that there was no direct evidence that the decedent destroyed the will. The presumption is that the will *was* destroyed and arises from the fact that the will cannot be located upon the testator's death. *Porter v. Sheffield, supra.* It then falls on appellee to prove that the will was *not* destroyed. *Thomas v. Thomas, supra.* Under section 28-40-302, the *proponent* of a lost will must establish the terms of the will *and* that the will was in existence or that the will was fraudulently destroyed in the lifetime of the testator. *Matheny v. Heirs of Oldfield,* 72 Ark. App. 46, 32 S.W.3d 491 (2000). The finding that there was no direct evidence that the will was destroyed cannot be used to rebut the presumption because that would turn the presumption on its head. The trial court pointed out that the decedent made statements that he was not happy with appellee serving as executor and that he was going to tear up the will. Mary Sabbs, a neighbor who regularly assisted the decedent with errands, testified that the decedent, while residing in the nursing home, wanted her to take him to attorney William Reed's office. Two attorneys testified that the decedent frequently changed his will. Such statements can be considered as strengthening the presumption of revocation. *Bradway v. Thompson,* 139 Ark. 542, 214 S.W. 27 (1919). In *Garrett v. Butler, supra,* the court held that the absence of testimony that the decedent wanted to change his will supported the trial court's finding that the presumption had been rebutted.

■ The second reason given by the trial court for overcoming the presumption of revocation is that, even though the original will could not be found, the decedent retained a copy of the will. This is a factor that should not be considered in determining whether the presumption of revocation has been rebutted. It is the failure to produce the original document that raises the presumption of revocation. *See Barrera v. Vanpelt,* 332 Ark. 482, 965 S.W.2d 780 (1998). Thus, the fact that only a copy has been found is evidence that establishes and promotes the presumption;

therefore, that same evidence cannot logically be considered as proof that overcomes the presumption. *See In re Estate of Millsap,* 75 Ill. 2d 247, 388 N.E.2d 374 (1979). Other courts have held that a copy of a will found after the testator's death in a place of safekeeping, such as a safe deposit box or the files of the attorney drafting the will, cannot be considered in determining whether the presumption of revocation has been rebutted. *Estate of McKee-. ver,* 361 A.2d 166 (D.C. 1976); *In re Estate of Fowler,* 681 N.E.2d 739 (Ind. Ct. App. 1997); *New York State Library Sch. Ass'n, Inc. v. Atwater,* 227 Md. 155, 175 A.2d 592 (1961); *Bailey v. Bailey,* 171 S. W. 2d 162 (Tex. Ct. Civ. App. 1943), *overruled on other grounds by In re Estate of Glover,* 744 S.W.2d 939 (Tex. 1988).

■ The third reason the trial court gave for finding that appellee had rebutted the presumption is that there was no evidence that the decedent contacted an attorney. As part of his finding on this point, the trial court determined that the decedent had a practice of revoking wills by execution of a subsequent will. The execution of a subsequent will is not the only method by which one can revoke a will, nor is there any requirement that an attorney assist in such revocation. Arkansas Code Annotated section 28-25-109(a)(2) (1987) provides that "[a] will . . . is revoked [b]y being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction." Mary Sabbs testified that the decedent, while residing in the nursing home, wanted her to take him to attorney Reed's office.

■ The fourth reason given by the trial court was that the decedent was confined to a nursing home and in deteriorating physical condition. This is a proper consideration for determining whether the presumption of revocation was rebutted. *Tucker v. Stacy,* 272 Ark. 475, 616 S.W.2d 473 (1981); *Garrett v. Butler, supra.*

■ We do not believe that appellee has met his burden in establishing a lost will because the evidence was insufficient to rebut the presumption of revocation due to the trial court incorrectly applying the presumption that the will was destroyed.

We reverse on this point.

■ For her second point, appellant argues that the trial court erred in not admitting the holographic instrument to probate because the holographic document did not contain a date of execution. We do not reach the issue because it is moot. The beneficiary under the holographic document, Francis Felton, predeceased the decedent. Under Ark. Code Ann. § 28-9-203 (1987), the lapsed devise of the holographic document would pass under intestate succession.

Reversed.

PITTMAN and ROBBINS, JJ., agree.